1
2
3
4
5
6
7
8
9   UNITED STATES DISTRICT COURT

10   SOUTHERN DISTRICT OF CALIFORNIA

11

12   DAVID RADEMAKER,                     Case No.:  21-CV-1757 JLS (AHG)
     CDCR #P-01361,
13                                         **ORDER DISMISSING FIRST**
14                          Plaintiff,     **AMENDED COMPLAINT WITH**
                                           **LEAVE TO AMEND PURSUANT**
15   v.                                    **TO 28 U.S.C. § 1915A**

16   DR. GANZEKAUFER, Ph.D., CDCR
     Psychologist; COVELLO, Warden;        (ECF No. 12)
17   Q. JACKSON, Correctional Sergeant;
     P. GONZALEZ, Correctional Officer;
18   ZAMBRANO, Correctional Officer; and
     STEADMAN, Associate Warden,
19
20                          Defendants.

21

22        Plaintiff David Rademaker, a state prisoner incarcerated at Richard J. Donovan

23   Correctional Facility ("RJD") in San Diego, California, is proceeding pro se with a First

24   Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983.  ECF No. 12.  Plaintiff alleges

25   an RJD psychologist, two RJD Wardens, and three RJD correctional officers violated his

26   First, Eighth, and Fourteenth Amendment rights when they (i) tampered with his legal mail

27   to frustrate his ability to litigate this case, and (ii) failed to protect him from assault by

28   other inmates in retaliation for complaining about the mail tampering.  *Id.* at 14–23.

1

On April 25, 2022, the Court denied Plaintiff's motions to proceed *in forma pauperis* ("IFP"), for appointment of counsel and for a temporary restraining order and dismissed this action without prejudice for failure to pay the civil filing fee. *See* ECF No. 14. Plaintiff has now paid the filing fee. *See* ECF No. 15.

## SCREENING PURSUANT TO 28 U.S.C. § 1915A

### I.   Standard of Review

The Court must conduct an initial review of Plaintiff's FAC under 28 U.S.C. § 1915A, which "mandates early review - 'before docketing () or () as soon as practicable after docketing' - for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)). "'On review, the court shall . . . dismiss the complaint, or any portion of the complaint,' if it '(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.'" *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

Screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). There must be more than "labels and conclusions" or "a formalistic recitation of the elements of a cause of action," to plausibly state a claim, because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

"Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "When there are well-pleaded factual allegations, a court should assume their veracity and then

2

determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged - but it has not 'show(n)' - 'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citation omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012).

## II.    Allegations in the FAC

Plaintiff describes himself as a disabled inmate participating in the Enhanced Outpatient Program ("EOP") at RJD and alleges that on July 16, 2019, he was told by two fellow inmates that two other inmates were plotting to assault him. FAC at 14. He alleges Defendant Dr. Ganzekaufer, Plaintiff's primary mental healthcare professional, had warned Defendant RJD Correctional Sergeant Jackson that there was a serious threat of violence against several EOP inmates, with Plaintiff's name used specifically. *Id*. at 8, 14. Dr. Ganzekaufer gave such a warning to Plaintiff and about ten other inmates during a therapy session on July 17, 2019, stating there was a "very serious situation" involving Plaintiff, and Dr. Ganzekaufer told Plaintiff to be careful. *Id*. at 14.

Plaintiff asked Jackson later that day if he knew about the "ongoing plot to assault him," and Jackson told Plaintiff that "it's not that serious - don't worry about [it]." *Id*. at 14–15. When Plaintiff responded he was worried, Jackson replied: "I am hella busy here - you either go to the hole or take your ass back to the unit - it's your decision." *Id*. at 15.

/ / /

The next day, on July 18, 2019, Plaintiff was stabbed in the back over 11 times with a nine-inch shank by an inmate named Goofy while another inmate named Montalvo stated: "Die you fucking Jew!!"  *Id*.  After Plaintiff was stabbed, Defendant RJD Correctional Officer Gonzalez placed Plaintiff in handcuffs and escorted him to the medical department for treatment.  *Id*.  Plaintiff alleges Gonzalez had a smirk on his face when he told Plaintiff, "You had your chance to leave," and then told a nurse Plaintiff had stabbed himself in the back.  *Id*.

On July 21, 2019, Jackson informed Plaintiff he was being placed on suicide watch in what Plaintiff alleges was an attempt to silence and discredit him.  *Id*.  Plaintiff alleges that he was placed naked in a cell with only a smock and told he was suicidal because he had stabbed himself in the back 11 times.  *Id*.  A few minutes later, Jackson gave Plaintiff a copy of a CDCR 114-d lock up order and told Plaintiff: "I'm surprised you were never stabbed sooner . . .  You should have left."  *Id*.

Plaintiff alleges that the motive for Defendants' deliberate indifference to his risk of assault was Plaintiff's civil lawsuit, Case No. 18-CV-1831 WQH (AGS) (S.D. Cal.), involving tampering with Plaintiff's prison legal mail.  FAC at 16.  Plaintiff lists eight instances of mail tampering from October 2017 to June 2021 by psychologists at RJD.  *Id*. On September 7, 2021, Plaintiff had an outgoing legal mail letter he mailed a week earlier returned to him opened and shredded, with documents missing.  *Id*.  Plaintiff filed a staff misconduct complaint in which he stated he suspected Defendant RJD Correctional Officer Zambrano of being the one who tampered with that piece of mail.  *Id*. at 15–16.  On or about September 9, 2021, Plaintiff observed Zambrano being verbally reprimanded about "something," and he believes Zambrano had been caught destroying and tampering with inmate mail.  *Id*. at 16–17.  Plaintiff claims that the mail tampering has "been adversely affecting the plaintiff's ability to effectively prosecute this case," *id*. at 17, and he alleges that RJD Associate Warden Steadman knew of the mail tampering and allowed it to continue, *id*. at 23.

/ / /

21-CV-1757 JLS (AHG)

Plaintiff alleges Defendant RJD Warden Covello allowed two incompatible groups of inmates, "STG gang inmates" and "sensitive need inmates-gang drop outs in need of EOP placement," to be housed together in Facility A, "despite over 33 attacks promulgated discriminately against the E.O.P inmates." *Id*. at 17. He alleges Covello knew or should have known of the danger that Plaintiff would be assaulted but "did absolutely nothing to circumvent the known intentions of the STG gang affiliates and members" to assault EOP inmates and failed to remove them from the yard. *Id*.

## III.  Discussion

Under a liberal construction of the FAC, Plaintiff claims Defendants Correctional Officer Zambrano and Associate Warden Steadman violated his First Amendment right of access to the courts by tampering with his legal mail and failing to stop the tampering, respectively. He claims Defendants Dr. Ganzekaufer, Warden Covello, and Correctional Officers Jackson and Gonzalez failed to protect him from assault in violation of the Eighth Amendment and did so in retaliation for his complaints about mail tampering.

The Court addresses the sufficiency of each of these claims in turn.

### A.  *Denial of Access to the Courts*

Plaintiff claims Defendants Zambrano and Steadman denied Plaintiff access to the courts because Plaintiff suspects Zambrano tampered with his legal mail and he alleges Steadman failed in his duty to stop the tampering, which has "been adversely affecting the plaintiff's ability to effectively prosecute this case, because every time he mailed legal mail - it was being tampered with." FAC at 17. Plaintiff also alleges he was placed on suicide watch to silence and discredit him. *Id*. at 15.

To state a claim for denial of access to the courts, Plaintiff must allege "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Lewis v. Casey*, 518 U.S. 343, 348–49 (1996); *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as an "inability to file a complaint or defend against a charge"). The nature

///

and description of the underlying claim must be set forth in a complaint "as if it were being independently pursued." *Christopher v. Harbury*, 536 U.S. 403, 417 (2002).

Plaintiff's FAC fails to plausibly allege an "actual injury" because his allegation that the tampering with his legal mail has impeded his ability to prosecute this case or his other civil case is entirely conclusory and does not identify a non-frivolous claim Plaintiff has lost or has been frustrated from bringing. *See Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to an access to courts claim.) (quoting *Lewis*, 518 U.S. at 353 & n.4); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a 42 U.S.C. § 1983 claim.).  If Plaintiff wishes to proceed with such a claim, he must set forth facts plausibly alleging, in a non-conclusory manner, that he has suffered an "actual injury" as a result of the tampering with his legal mail or his placement on suicide watch.  *See Harbury*, 536 U.S. at 417 (holding that the nature and description of the underlying non-frivolous claim that was lost or frustrated must be set forth in the complaint "as if it were being independently pursued").

### B.   Violations of the Eighth and Fourteenth Amendments

Plaintiff also claims he was subjected to cruel and unusual punishment in violation of the Eighth Amendment by Defendants Dr. Ganzekaufer, Covello, Jackson, and Gonzalez by their deliberate indifference to a known risk of assault by other inmates.

The prohibition on the infliction of cruel and unusual punishment embodied in the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  "[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment'" and requires

that "a prison official must have a 'sufficiently culpable state of mind'"—that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297, 302–03). The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff alleges that Dr. Ganzekaufer provided a grossly negligent level of care by failing to immediately, reasonably, and comprehensively prevent, discourage, or obstruct an imminent threat to Plaintiff by alerting custody staff. FAC at 18. However, Plaintiff alleges that Dr. Ganzekaufer told him and at least ten other inmates of a threat to Plaintiff and other EOP inmates before Plaintiff was stabbed, and that Plaintiff heard Dr. Ganzekaufer alerting a member of the custody staff, Jackson, of that threat. *Id.* at 14. A prison official "who actually knew of a substantial risk to inmate health or safety may be found free of liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Plaintiff does not plausibly allege what more Dr. Ganzekaufer could or should have done to fulfill his requirement to "take reasonable measures to guarantee the safety of the inmates" other than to alert custody staff and the inmates who he perceived to be at risk, as he is alleged to have done. *Farmer*, 511 U.S. at 832; *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976) (a plaintiff must prove an affirmative link between an injury and a defendant's conduct).

Plaintiff alleges that after Dr. Ganzekaufer told Jackson of the threat, Plaintiff asked Jackson if he knew about the "ongoing plot to assault him," and Jackson told Plaintiff, "it's not that serious - don't worry about [it]." FAC at 14–15. When Plaintiff responded that he was worried, Jackson replied: "I am hella busy here - you either go to the hole or take your ass back to the unit - it's your decision." *Id.* Thus, Plaintiff alleges Jackson knew of the threat but did not consider it serious, and that he advised Plaintiff that his options were to return to his cell and take his chances or seek protective custody in administrative segregation.

To plausibly allege deliberate indifference, "the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). Plaintiff does not allege Jackson drew an inference of a substantial risk of danger to Plaintiff before the assault; indeed, he alleges the opposite—that Jackson knew of the threat and did not consider it to be serious. However, Plaintiff also alleges that after the assault Jackson told him, "I'm surprised you were never stabbed sooner . . . You should have left." FAC at 15. A defendant can be found to be aware of a risk by the fact that the risk was obvious. *See Farmer*, 511 U.S. at 842 (noting that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"); *Berg v. Kincheloe*, 794 F.2d 457, 460–61 (9th Cir. 1986) (allegation that guard ignored obvious risk to prisoner's safety stated a prima facie cause of action under the Eighth and Fourteenth Amendments). However, even assuming Plaintiff plausibly has alleged Jackson knew of a serious risk to Plaintiff's safety before the assault, Plaintiff has not plausibly alleged that Jackson responded unreasonably by informing Plaintiff of his option for protective custody. *Farmer*, 511 U.S. at 844 (A prison official "who actually knew of a substantial risk to inmate health or safety may be found free of liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted."); *Rizzo*, 423 U.S. at 371–72 (holding that a plaintiff must prove an affirmative link between an injury and a defendant's conduct).

Plaintiff alleges Defendant RJD Correctional Officer Gonzalez escorted Plaintiff to the medical department for treatment after he was attacked. FAC at 15. Gonzalez allegedly smirked when he told Plaintiff: "You had your chance to leave," and Gonzalez allegedly told a nurse that Plaintiff had stabbed himself in the back. *Id*. These allegations do not plausibly state a claim against Gonzalez. *See Oltarzewski v. Ruggiero*, 830 F.3d 136, 139 (9th Cir. 1987) (holding that verbal harassment or abuse alone does not state a § 1983 claim); *Rizzo*, 423 U.S. at 371–72 (holding that a plaintiff must prove an affirmative link between an injury and a defendant's conduct).

21-CV-1757 JLS (AHG)

Plaintiff alleges Defendant Warden Covello allowed two incompatible groups of inmates, "STG gang inmates" and "sensitive need inmates-gang drop outs in need of EOP placement," to be housed together in Facility A, "despite over 33 attacks promulgated discriminately against the E.O.P. inmates" that had "increased in both severity/intensity in 2021." FAC at 17. He alleges Covello knew or should have known of a danger that Plaintiff would be one of the EOP inmates assaulted yet "did absolutely nothing to circumvent the known intentions of the STG gang affiliates and members to 'stab' and 'assault' all E.O.P inmates and 'remove them' from the yard." *Id*.

 "A supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Plaintiff must allege facts showing that a supervisory defendant (i) personally participated in the alleged violation of his constitutional rights, (ii) knew of the violation and failed to prevent it, or (iii) "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Plaintiff's allegations that Covello is responsible for Plaintiff's assault because Covello knew that assaults between two groups of inmates had taken place in Facility A yard and therefore should have removed one of the groups from the yard lacks specific factual allegations that Covello was actually aware of a substantial risk of assault to Plaintiff or that removing one group from the Facility A yard was the only reasonable measure available to avoid such assaults, particularly in light of Plaintiff's allegation that he was assaulted the day after he declined protective custody. In order to state a claim against Covello, Plaintiff must set forth specific factual allegations sufficient for the Court to draw a reasonable conclusion that Covello knew Plaintiff faced a substantial risk of assault and failed to take reasonable measures to avoid it or implemented a policy that was the moving force of the alleged constitutional violation. *See Iqbal,* 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a 42 U.S.C. § 1983 claim).

### C. Retaliation

Plaintiff claims Defendants failed to protect him from assault in retaliation for Plaintiff's complaints about mail tampering. FAC at 16. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights."). However, a plaintiff must allege a retaliatory motive—that is, a causal connection between the adverse action and his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Here, Plaintiff has not plausibly alleged a retaliatory motive because the allegation in the FAC that Defendants were motivated by his complaints regarding mail tampering is entirely conclusory. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a 42 U.S.C. § 1983 claim.); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity). Although the timing of Defendants' actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference or retaliatory intent. *Id*. Plaintiff must allege *facts* from which a plausible inference can be drawn that Defendants took adverse actions against him in retaliation for his protected activity.

/ / /

***D.***     ***Conclusion***

In light of the foregoing, Plaintiff's FAC is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121. In light of his pro se status, however, the Court grants Plaintiff leave to amend to attempt to address the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## CONCLUSION

For the reasons provided above, the Court **DISMISSES** Plaintiff's First Amended Complaint (ECF No. 12) for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b) and **GRANTS** Plaintiff <u>forty-five (45) days'</u> leave from the date of this Order in which to file an Amended Complaint curing all the deficiencies of pleading noted above. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint and/or First Amended Complaint. Defendants not named and any claims not realleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not realleged in an amended pleading may be "considered waived").

***If Plaintiff fails to timely file an Amended Complaint, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment.*** *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix

/ / /

/ / /

11

his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  September 28, 2022

Hon. Janis L. Sammartino
United States District Judge