UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| David RADEMAKER,<br><br>                          Plaintiff,<br><br>v.<br><br>Andrew GANZEKAUFER, et al.,<br><br>                        Defendants. | Case No.: 21-cv-1757-AGS-AHG<br><br>**ORDER DISMISSING THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND AND DENYING OTHER MOTIONS (ECF 33)** |

      In his third amended complaint,[1] plaintiff David Rademaker claims that the currently named defendants failed to protect him from assault, retaliated against him, and interfered with his access to the courts. (ECF 33, at 6–23.) Because this latest complaint fails to state a claim, and because it is now clear Rademaker is unable to cure the recurring pleading defects, this action is dismissed without further leave to amend.

## 28 U.S.C. § 1915A SCREENING

**A.    Standard of Review**

      The Court must conduct an initial review of "all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)). "'On review, the court shall . . . dismiss the complaint, or any portion of the complaint,' if it '(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.'" *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

---

[1] Rademaker's motion for leave to file his third amended complaint (*see* ECF 33) is moot, as the Court already granted that leave (*see* ECF 25, at 11–12) and it has already been filed. Rademaker delivered it to prison officials before the amendment deadline (*see* ECF 30, at 6; ECF 33, at 26).

This screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To establish § 1983 liability, Rademaker must show both "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.   Discussion**

   **1.** *Access-to-Courts Claim*

In dismissing his last two complaints, the Court instructed Rademaker that, to state a claim for denial of access to the courts, he must allege "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" (ECF 17, at 5; *see also* ECF 25, at 2 (same)). The Court found that the previous complaints failed to plausibly allege an actual injury. In particular, the Court noted that Rademaker's allegations—that purported tampering with his legal mail impeded his ability to prosecute his case—were entirely conclusory and did not identify a non-frivolous claim he lost or was frustrated from bringing. (ECF 17, at 6; ECF 25, at 3.)

In his third amended complaint, Rademaker once again conclusorily alleges defendant Zambrano intercepted, read, destroyed, and altered his legal mail, which interfered with his attempt to "initiat[e] court actions, and grievance actions." (ECF 33, at 13–14.) Yet again, there are no factual allegations of actual injury. Instead, Rademaker

alleges he successfully communicated with the FBI, a warden, a correctional lieutenant, district attorneys, a retired judge, a university law clinic, and two law firms about his legal concerns—and he attaches some of those documents to his most recent pleading. (ECF 33-1, at 4–6, 15–20.) Thus, the latest complaint fails to state an access-to-courts claim. In the Order dismissing the second amended complaint, Rademaker was warned that he would have one final opportunity to amend. (ECF 25, at 11.) So, the access-to-courts claim is dismissed without further leave to amend.

### 2. *Eighth Amendment Failure-to-Protect Claim*

The Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. at 834. "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,'" and requires that "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

At the time of the relevant events, Rademaker belonged to a group of inmates with developmental and mental impairments participating in the Enhanced Outpatient Program (EOP) in Facility A of Richard J. Donovan Correctional Facility. (ECF 33, at 4, 6.) Facility A consists of five yards, two of which housed EOP inmates while the other three housed protective-custody inmates with active gang members. (*Id*. at 6.) In January 2019, defendant Covello took over as acting warden and purportedly instituted an "atypical policy" of transferring the EOP inmates to a yard on Facility A that housed active gang members. (*Id*.) Rademaker alleges that violent attacks on EOP inmates and correctional staff began immediately and increased in scope and scale for months. (*Id*.) He claims that

seven defendants—Correctional Officers Jackson and Ortiz, Clinical Director Dr. Sato, psychologists Dr. Ganzekaufer and Dr. Katchua, and Acting Wardens Pollard and Covello—were aware the housing change was causing violence. (*Id*. at 6–12.) On July 18, 2019, Rademaker was stabbed seven times by gang-member inmates and hospitalized for three days with a punctured liver. (*Id*. at 12.) He claims defendants violated his Eighth Amendment right to be protected from a known danger of assault. (*Id*. at 19–20.)

(a) *Medical Defendants*

Rademaker alleges that Dr. Ganzekaufer and his supervisor Dr. Katchua, along with newly added defendant Clinical Director Dr. Sato, were aware of the risk of increased assaults from integrating the two groups of inmates. (ECF 33, at 6–11.) Rademaker alleges that on multiple occasions, Dr. Ganzekaufer notified Dr. Katchua, the other EOP inmates, and Donovan Correctional Facility staff of the potential danger of assault, as well as advising Rademaker to "lay low." (*Id*.) Dr. Ganzekaufer told Plaintiff that custody staff and Dr. Katchua had been informed of the threat the day before the attack. (*Id*. at 12.) Rademaker subsequently declined an offer of protective custody. (*Id*. at 10.) But he now claims that anyone else "would [have] been placed in a holding cell, away from other inmates, for safety reason[s] . . . and not let on the yard with no [choice] at all." (*Id*. at 12.)

The Court previously found the allegations against Dr. Ganzekaufer failed to state an Eighth Amendment claim because there were no allegations this defendant acted unreasonably in the face of a known threat to Rademaker's safety. (ECF 17, at 7.) To the contrary, Dr. Ganzekaufer told Rademaker and other EOP inmates of such a threat before Rademaker was stabbed, and Dr. Ganzekaufer informed defendant Correctional Officer Jackson of the same threat, while mentioning Rademaker by name. (*Id*. at 3, 7.) In the current complaint, Rademaker likewise claims that Dr. Ganzekaufer informed custody staff and Dr. Katchua of the threat, but Rademaker now alleges these defendants should also have instructed custody staff to place him in protective custody. (ECF 33, at 10, 12.)

Rademaker has not cured his defective Eighth Amendment failure-to-protect claim because he has not plausibly alleged that Dr. Ganzekaufer or Dr. Katchua acted

unreasonably in the face of a known threat. Prison officials "who actually knew of a substantial risk to inmate health or safety may be found free of liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Rademaker does not plausibly allege what more these doctors could have or should have done to fulfill their obligation to "take reasonable measures to guarantee the safety of the inmates." In fact, he concedes that they alerted custody staff and the at-risk inmates. Although Rademaker alleges Dr. Ganzekaufer and Dr. Katchua should have told custody staff he was a candidate for placement in protective custody, Rademaker was offered and declined protective custody. (ECF 33, at 10.) Rademaker's contention that he should have been forced into protective custody against his will fails to state a claim against these defendants, because there are no allegations they had such authority.

As for Dr. Sato, who became the Clinical Director about a year and a half after the attack (*see id.* at 5), Rademaker's failure-to-protect allegations are somewhat different. Rademaker faults Dr. Sato for concluding that Rademaker was "delusional" and for disagreeing with another doctor about whether Rademaker needed psychotropic medication. (*Id.* at 14–18.) These allegations are insufficient to plausibly allege Dr. Sato was involved with the alleged violations of Rademaker's federal rights. *See Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976) (noting that a plaintiff must prove an affirmative link between an injury and a defendant's conduct).

The Eighth Amendment failure-to-protect claim against defendants Dr. Ganzekaufer, Dr. Katchua, and Dr. Sato is dismissed without further leave to amend.

(b) *Defendant Jackson*

In this most recent complaint, Rademaker contends that, although Jackson offered to send him to protective custody, Jackson should have compelled Rademaker into protective custody against his will. (ECF 33, at 10, 12.) And Rademaker claims that, but for his status as an EOP inmate, he would have been forcibly placed in protective custody. (*Id.*) As in his prior complaints, Rademaker once again fails to plausibly allege that Jackson did not "respond[] reasonably to the risk" by informing Rademaker of his option for

protective custody. *See Farmer*, 511 U.S. at 844. And, again, he fails to allege what more Jackson could have done to prevent his injury, as there are no allegations that Jackson had authority to reverse the housing policy or force Rademaker into protective custody. The allegation that non-EOP inmates would have been forced into protective custody is conclusory. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]" (cleaned up)). Thus, the allegations against Jackson fail to state a claim and will be dismissed without leave to amend.

    (c) *Defendant Ortiz*

In an earlier complaint, the Court concluded that the brief references to Correctional Lieutenant Ortiz did not contain facts that plausibly alleged this defendant knew of and deliberately disregarded a known risk to Rademaker's safety and therefore did not state an Eighth Amendment claim. (*See* ECF 25, at 6 (citing ECF 21, at 3, 6, 8, 14, 21).) The third amended complaint alleges that Ortiz: was aware of the danger of inmate assaults at Donovan Correctional Facility; knew about the attack on Rademaker; was responsible for investigating the facility's correctional officers; learned of Rademaker's inmate grievances and correspondence about the attack; but treated him differently because he was an EOP inmate. (ECF 33, at 8, 13, 15, 20–21.) As with the previous versions of his pleading, Rademaker's allegations against Ortiz fail to state a claim because they remain vague and conclusory, including his allegations that he was treated differently because he was an EOP inmate. Rademaker is not entitled to another chance to correct this deficiency. His Eighth Amendment failure-to-protect claim against Ortiz is dismissed without leave to amend.

    (d) *Warden Defendants*

Rademaker alleges that retired Warden Covello implemented the housing policy that allowed two incompatible inmate groups to be housed together on Facility A, and he alleges that Covello's replacement, Acting Warden Pollard, discriminated against Rademaker because of his EOP status. (ECF 33, at 6, 15–16, 19–21.) Plaintiff was previously instructed that "[a] supervisory official may be held liable under § 1983 only if 'there exists either

(1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018). In other words, Rademaker must allege that a supervisory defendant either personally participated in the violation of Rademaker's constitutional rights, knew of the violation and failed to prevent it, or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

In the Court's last dismissal order, Rademaker was informed that his allegations against Warden Covello lacked specific factual allegations that Covello was actually aware of a substantial risk of assault to Rademaker or that removing one group from the Facility A yard was the only reasonable measure available to avoid such assaults. (*See* ECF 17, at 9.) The Court emphasized that Rademaker's allegations were particularly deficient "in light of Plaintiff's allegation that he was assaulted the day after he declined protective custody." (*See id*.) Rademaker was instructed that to state a claim against Covello, he must set forth specific factual allegations sufficient for the Court to draw a reasonable conclusion that Covello knew Rademaker faced a substantial risk of assault and failed to take reasonable measures to avoid it or implemented a policy that was the moving force of the alleged constitutional violation. (*Id*.)

Rademaker once again recycles the same allegations against former Warden Covello, that is, that he instituted a housing policy that led four-and-a-half months later to Rademaker being assaulted. There are no allegations that Wardens Covello or Pollard were aware of the specific threat to Rademaker, were aware that Rademaker was offered but refused protective custody the day before the assault, or were aware that he needed to lie low to be safe. Rademaker continues to offer only conclusory allegations that they were aware that assaults were taking place after the integration of the two yards or that they treated him differently because he was an EOP inmate. Even assuming Rademaker could present detailed allegations regarding defendants' knowledge of the danger of assaults, he

still fails to allege deliberate indifference or a causal connection between the actions of the wardens and the alleged constitutional violation. In fact, he admits that he declined protective custody the same day he learned of the threat and that he was not assaulted until the next day. *See, e.g.*, *McDaniels v. United States,* 14cv2594-VBF (JDE), 2017 WL 10518115, at *8 (C.D. Cal. Apr. 27, 2017) (finding that allegations warden knew of prior inmate assaults but not a specific threat to plaintiff failed to state a deliberate-indifference claim or show a causal connection to plaintiff's stabbing "because Plaintiff alleges that he had the ability to use the safety measure provided by the Prison for precisely the situation as presented here—the emergency button in his cell—yet chose not to").

The Eighth Amendment failure-to-protect claim against Covello and Pollard is dismissed without leave to amend.

### 3. *Retaliation Claim*

Rademaker alleges that he saw inmate Pawlicki having difficulty walking and slurring his speech, so Rademaker informed Correctional Officer Zambrano that Pawlicki might need medical care for a stroke. (ECF 33, at 16–17.) Zambrano replied that Pawlicki was drunk and refused to summon medical aid. (*Id.* at 17.) That day, Rademaker wrote a letter to a retired superior-court judge asking for the Donovan warden to be informed of the situation. (*Id.*) As a result, inmate Pawlicki was found to have suffered a stroke and Officer Zambrano was investigated for misconduct. (*Id.*) According to Rademaker, Zambrano then retaliated against him by interfering with his legal mail, so that Rademaker could not make additional complaints. (*Id.* at 21–22.)

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert

an injury no more tangible than a chilling effect on First Amendment rights."). The "because of" prong requires Rademaker to allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

In Rademaker's first amended complaint, he had not plausibly alleged a retaliatory motive because he offered only conclusory allegations that defendants "were motivated by [Rademaker's] complaints regarding mail tampering." (*See* ECF 17, at 10.) Rademaker was instructed he "must allege *facts* from which a plausible inference can be drawn that Defendants took adverse actions against him in retaliation for his protected activity." (*Id*.) In his next complaint, Rademaker claimed that Zambrano interfered with his legal mail in retaliation for Rademaker's report on Zambrano, resulting in Zambrano being investigated. (*See* ECF 25, at 9.) The Court identified two fatal pleading defects in that complaint. First, it found that Rademaker had not alleged "any facts as to why Rademaker believes Zambrano interfered with his legal mail for that reason." (*Id*. at 9–10.) The Court cautioned, "Conclusory statements of retaliatory intent are insufficient." (*Id*. at 10.) Although the timing of the alleged mail interference—"three months after Rademaker reported Zambrano"—might be circumstantial evidence of retaliatory intent, the Court held that it was insufficient by itself to plausibly allege such intent. (*Id*.) Second, even if Rademaker could establish retaliatory intent, the Court concluded that Rademaker still failed "to include any details regarding the nature of the [allegedly impeded] mail" or any adverse consequences from such mail interference. (*Id*.)

In the most recent complaint, there are no allegations that cure either defect. Rather, Rademaker attaches to this latest complaint replies to his correspondence to two law firms, a university law clinic, the office of the San Diego District Attorney, and defendants Ortiz and Pollard, as well as an inmate grievance. (ECF 33-1, at 4–6, 15–20.) Rademaker once again omits any factual allegations regarding how his correspondence was interfered with or altered or what, if any, negative consequences resulted.

Thus, the retaliation claim is dismissed without leave to amend.

## CONCLUSION

The Court has repeatedly instructed Rademaker on the relevant pleading requirements and recently gave him a final chance to amend. With this latest complaint, it is now clear that he is unable to meet those requirements, as he again fails to state any claims. *See Wilhelm*, 680 F.3d at 1121; 28 U.S.C. § 1915A(b)(1). Thus, the third amended complaint is **DISMISSED** without leave to amend.

The Clerk shall enter judgment and close this case.

Dated: October 20, 2023

Hon. Andrew G. Schopler
United States District Judge